**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
JOHNSON & JOHNSON AND LIFESCAN, INC. :
                                              Plaintiffs, :

-against- :

SOUTH POINTE WHOLESALE, INC., :
JARROD SHIRLEY, EUTRE SHIRLEY, :
MC DISTRIBUTORS LLC, AMERICAN :
DIABETES WHOLESALE LLC D/B/A/ :
PREMIER PURCHASING GROUP, ERIC :
CHIRINSKY, MICHAEL MAGUIRE, :
HEALTHSOURCE DISTRIBUTORS LLC, :
JERRY L. WOLASKI, QK HEALTHCARE INC., :
ROWAN TREE 1123 CC, ELIZABETH M. :
VENTER, REUBEN C. MAHLAGARE, AND :
JOHN DOES 1-10, :
                                              Defendants. :
------------------------------------------------------------- x

08 Civ. **08 1297**

COMPLAINT **TOWNES, J.**

Jury Trial Demanded

FILED UNDER SEAL **GOLD, M.J.**
PURSUANT TO 15 U.S.C. § 1116



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★   MAR 31 2008   ★

BROOKLYN OFFICE

      Plaintiffs Johnson & Johnson ("J&J") and LifeScan, Inc. ("LifeScan") (collectively, "Plaintiffs"), by their attorneys, Kramer Levin Naftalis & Frankel LLP, for their complaint against defendants South Pointe Wholesale, Inc. ("South Pointe"), Jarrod Shirley, Eutre Shirley, MC Distributors LLC ("MC Distributors"), American Diabetes Wholesale, LLC d/b/a Premier Purchasing Group ("American Diabetes"), Eric Chirinsky, Michael Maguire, Healthsource Distributors LLC ("Healthsource"), Jerry L. Wolaski, Rowan Tree 1123 CC ("Rowan Tree"), Elizabeth M. Venter, Reuben C. Mahlagare, QK Healthcare Inc. ("QK") and John Does 1-10, allege as follows:

<u>THE NATURE OF THE ACTION</u>

      1.    LifeScan, an operating subsidiary of J&J, is the distributor of the world-renowned, high-quality OneTouch blood glucose test strips for use with OneTouch blood

glucose meters by diabetics to monitor their blood glucose levels. This case involves the willful and knowing sale and distribution of blood glucose test strips bearing counterfeit OneTouch trademarks. Each of the defendants, individually, has been involved in such sales and/or distribution of such products, and in conspiracy with one another, are selling and distributing counterfeits nationwide, including into the Eastern District of New York.

2. To put an end to this potentially dangerous conduct, and to recover the damages caused by it, Plaintiffs now bring this anti-counterfeiting action for injunctive and monetary relief for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and New York General Business Law Section 349, trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and New York General Business Law Section 360-l, and common law unjust enrichment and unfair competition.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338 and 1367 and general principles of ancillary and pendent jurisdiction. The Court has personal jurisdiction over each of the defendants pursuant to FRCP Rule 4(k) and/or NY CPLR §§ 301 and 302. The Court also has personal jurisdiction over each of the defendants because the tortious acts described in this complaint (which occurred in New York, among other places), were conducted and/or directed by each of the defendants.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

5. LifeScan is a corporation organized under the laws of the State of California with its principal place of business at 1000 Gibraltar Drive, Milpitas, CA 95035.

KL3 2647284.5

6. LifeScan is a wholly-owned operating subsidiary of J&J, and J&J is organized under the laws of the State of New Jersey with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

7. South Pointe is a corporation organized under the laws of the State of Kentucky with a primary business address at 321 Mathews Mill Road, Glasgow, Kentucky 42141. It is also incorporated as a foreign business corporation in New York with a business address at 110 Lake Avenue, Nesconset, New York 11767. South Pointe purchased and sold counterfeit packaged OneTouch test strips to Precision RX, a pharmacy who in turn sold the counterfeit packaged OneTouch test strips to customers.

8. Jarrod Shirley resides at 204 Autumn Ridge Road, Glasgow, Kentucky 42141 and, together with Eutre Shirley, are the moving, active and conscious force behind South Pointe.

9. Eutre Shirley resides at 1150 J Carter Road, Glasgow, Kentucky 42141 and, together with Jarrod Shirley, are the moving, active and conscious force behind South Pointe.

10. MC Distributors is a corporation organized under the laws of the State of Florida with a primary business address of 2501 NW 34th Place, Suite 35, Pompano Beach, Florida 33064. MC Distributors sold counterfeit OneTouch test strips to QK, which is located in the Eastern District of New York, and upon information and belief to other distributors throughout the United States, including Healthsource.

11. Eric Chirinsky resides at 5598 NE 7th Avenue, Boca Raton, Florida 33432. Chirinsky is a Managing Member of MC Distributors and is one of the active and controlling forces behind it.

12. Michael Maguire resides at 23 Royal Palm Way, Apt. 15, Boca Raton, Florida 33432. Maguire is a Managing Member of MC Distributors and is one of the active and controlling forces behind it.

13. American Diabetes is a corporation organized under the laws of the State of Florida with a primary business address at 2501 NW 34th Place, Suite 35, Pompano Beach, Florida 33064. Mike Maguire is one of the active and controlling forces behind American Diabetes, and upon information and belief American Diabetes is an affiliate of MC Distributors.

14. Healthsource is a corporation organized under the State of Maryland with a primary business address of 1133 Greenwood Road, Suite F, Baltimore, Maryland 21208. Healthsource sold counterfeit packaged OneTouch test strips to AHold USA, Inc. ("AHold"). AHold, in turn, supplied its operating companies Giant Food Stores Pharmacy ("Giant"), Tops Family Market Pharmacy ("Tops"), and Stop and Shop ("Stop and Shop") with the counterfeit packaged test strips sold to it by Healthsource. Those counterfeits were sold nationwide, including the Eastern District of New York.

15. Jerry Wolaski resides at 6713 Westbrook Road, Baltimore, Maryland 21215. Wolaski is one of the active and controlling forces behind Healthsource.

16. Rowan Tree is a South African close corporation that conducts its business at 15 Marauder Street, Pierre Van Rynereld 0157, Centurion, South Africa. Rowan Tree sold thousands of counterfeit boxes of OneTouch test strips to MC Distributors and on information and belief to others.

17. Elizabeth M. Venter is a foreign person that works and resides at 15 Marauder Street, Pierre Van Rynereld 0157, Centurion, South Africa. Venter is one of the active and controlling forces behind Rowan Tree.

KL3 2647284.5

18. Reuben C. Mahlagare is a foreign person that resides at 14 Jodene Villas, Muller Street, Buccleuch, Johannesburg, South Africa. Mahlagare is one of the active and controlling forces behind Rowan Tree.

19. QK is a corporation organized under the laws of the State of Delaware with a primary business address of 2060 Ninth Avenue, Ronkonkoma, NY 11779. QK sold thousands of boxes of counterfeit packaged OneTouch test strips from the Eastern District of New York to Precision RX.

20. John Does 1-10 are other persons or entities involved in the manufacture, marketing, distribution and/or sale of counterfeit test strips bearing the OneTouch trademarks.

## THE FACTS

**Plaintiffs' World-Renowned Trademark**

21. Johnson & Johnson is the owner of incontestable registered federal trademarks appearing on packaging for OneTouch test strips, including: LIFESCAN (Reg. No. 1,384,863), ONETOUCH (Reg. Nos. 3,039,103; 2,863,393), ONE TOUCH (Reg. Nos. 1,484,999; 2,710,143), ONE TOUCH ULTRA (Reg. No. 2,538,658), INDUO (Reg. No. 2,652,567), and ULTRASMART (Reg. No. 2,730,626) (collectively, "OneTouch Marks"). Also on the box is the world famous trademark, JOHNSON & JOHNSON (Reg. No. 0,648,450).

22. LifeScan has spent and continues to spend tens of millions of dollars marketing and promoting in interstate and international commerce OneTouch blood glucose test strips packaged in high-quality boxes bearing its trademarks and trade dress. In the United States alone, LifeScan's sales of test strips in the last five years have totaled billions of dollars. As a result of the extensive advertising of OneTouch test strips in connection with the OneTouch Marks, the widespread sale of OneTouch test strips, and the celebrity that OneTouch Marks have

achieved, blood glucose test strips bearing OneTouch Marks have been and are now recognized by the public and in the trade as originating from a single source, LifeScan.

23. Test strips bearing the OneTouch Marks have come to be known by the purchasing public throughout the United States and abroad as blood glucose test strips of the highest quality. As a result, the OneTouch Marks and the goodwill associated with them are of inestimable value to LifeScan.

24. LifeScan has engaged and continues to engage in interstate and international activities designed to promote OneTouch and the business and goodwill associated with each of its trademarks and to expand the use and reputation of its trademarks, trade dress, logos and property in the State of New York, throughout the United States, and around the world.

**Background to this Lawsuit**

25. As part of its ongoing efforts to monitor and preserve the OneTouch trademarks and the underlying quality they represent, LifeScan maintains a customer service hotline to provide assistance to its customers. Customers can contact customer service with various questions and complaints regarding the glucose test strips that they have purchased. In response to these complaints, the customer service representatives gather information from the customer and sometimes request that the customer return the products in question to LifeScan for examination.

26. Once the product is returned to LifeScan, it is then analyzed to determine if there is in fact a defect in the product, or if it is a counterfeit product. As described more fully below, examination of several of the products returned to LifeScan revealed that genuine blood glucose test strips and vials were repackaged into counterfeit packaging.

27. One customer located in Pleasant Hill, California, called the customer service hotline to complain that the OneTouch test strips he had purchased directly from Wellpoint/Next

- 6 -

KL3 2647284.5

RX/Precision RX bearing lot number 2664435 were damaged due to a punctured vial. At the request of a customer service professional, this customer was asked to return the product to LifeScan. The returned test strips were then examined by LifeScan employees who have expertise in packaging, monitoring and labeling of OneTouch products. LifeScan learned that the original labels were removed from the vials and replaced with counterfeit labels. The lot number used on the counterfeit labels is an authentic lot number that has been used by LifeScan for OneTouch test strips, but is not the correct lot number for the test strips contained in the vials. The counterfeit labels also do not contain the same lot-specific information, such as calibration code, control solution range and other aspects of labeling, which is on the genuine labels bearing that lot number. The calibration code on the counterfeit vial is 30 and the control solution range is 115-153. Both of these numbers differ from the calibration code and control solution range that appear on the genuine label for this specific lot of test strips.

28. One customer located in Stagecoach, Nevada, called the customer service hotline, to complain that he was having issues with the OneTouch test strips he had purchased directly from Wellpoint/Next RX/Precision RX bearing lot number 2645635. At the request of a customer service professional, this customer was asked to return the product to LifeScan. The returned test strips were then examined and LifeScan which learned that the original labels had been removed from the vials and replaced with counterfeit labels. The lot number used on the counterfeit labels is an authentic lot number that has been used by LifeScan for OneTouch test strips, but it is not the correct lot number for the test strips contained in the vials. The counterfeit labels also do not contain the same lot-specific information, such as calibration code, control solution range and other aspects of labeling, which is on the genuine labels. The calibration code on the counterfeit vial is 16 and the control solution range is 103-138. Both of these numbers

KL3 2647284.5

differ from the calibration code and control solution range that appear on the genuine label for this specific lot of test strips.

29.     Another customer, located in Trumbull, Connecticut, called the customer service hotline to complain about OneTouch test strips bearing lot number 2649602 that he had purchased directly from Stop and Shop. This customer was also asked to return the product to LifeScan. The returned test strips were examined and LifeScan learned that the original labels were removed from the vials and replaced with counterfeit labels. The counterfeit labels do not contain the same lot-specific information as the genuine labels. For example, the control solution range on the vial is 109-145, which differs from the control solution range on the genuine labels for this specific lot number.

30.     In addition, LifeScan received customer complaints from a number of other customers who reported having purchased OneTouch test strips at Giant, Tops[1] and Stop and Shop, all retail operating companies under AHold. Analysis of the products returned by customers who had purchased test strips from these stores revealed that genuine LifeScan products had been repackaged with counterfeit packaging and labels.

31.     After learning that customers had purchased counterfeit packaged OneTouch test strips from Giant, Tops and Stop and Shop, investigators went to stores to determine if the counterfeit product were still in circulation and to attempt to measure the scope and extent of the problem. From March 17-20, 2008, investigators purchased OneTouch test strips from various stores in New York, Maryland, Connecticut, Massachusetts and Pennsylvania.

32.     LifeScan then examined the OneTouch test strips purchased by the investigators to determine if they too were counterfeit. Analysis of several of these products revealed that the

---

[1] In December 2007, AHold sold Tops to Morgan Stanley Private Equity. According to documents supplied to LifeScan by AHold, AHold still supplies Tops with LifeScan products.

outer packaging, package inserts and vial labels were counterfeit. Many of the samples packaged in counterfeit packaging bore real lot numbers, but were not the lot numbers in which the test strips were originally packaged. In addition, LifeScan examined samples packaged from various AHold pharmacies bearing the lot number 2762181. This lot number is not, and has never been, a valid lot number for the OneTouch Ultra product.

33. Through examination of the counterfeit product, including lot numbers 2762181 and 2645635, LifeScan was able to determine that the OneTouch test strips contained in the counterfeit packaging were originally intended for sale outside of the United States.

34. LifeScan sells test strips outside of North America in international packaging, often in multiple languages and often bearing the legend that the product is "Not for Sale in USA & Canada" or "Not for Sale in North America." One or more repackagers is collecting OneTouch test strips with international packaging, destined for various parts of the Middle East, Europe, and Asia, and breaking the seals on these international packaged cartons. The repackagers are then removing the vials that contain the test strips from the cartons and stripping the foreign-language labels off of the vials. The vials are then relabeled with counterfeit labels copied from genuine product sold in the United States and are then repackaged into counterfeit boxes that are copies of authentic boxes sold in the United States.

35. By comparing the suspect products to the authentic product retained by LifeScan, LifeScan learned of numerous material differences in the labels and packaging, including differences in the size, spacing, boldness, color and appearance of the font graphics and artwork. These differences, along with the differences in the information assigned to the suspect vials, provided conclusive evidence that the labels and cartons were not manufactured by LifeScan.

KL3 2647284.5

36. Most importantly, critical information on the label – including the calibration code, control solution range, and expiration date – no longer corresponds to the test strips inside the vial, which come from a different lot number altogether. Because this information does not correspond to these strips, the strips may yield inaccurate and unreliable blood glucose readings, and may even have passed their date of expiration. Inaccurate blood glucose readings present a possibility of harm to people with diabetes who depend on accurate readings to structure their food intake, make treatment decisions, and safely engage in daily activities. In addition, the relabeled vials no longer bear the authentic manufacturing lot codes for the strips inside the vial, which would make it nearly impossible to properly perform a recall of the original lot numbers were that ever required.

37. Beyond this, LifeScan also does not know under what conditions the adulterated test strips were relabeled, shipped and stored and, therefore, LifeScan cannot vouch for the quality, safety and integrity of the repackaged test strips. If the test strips were improperly handled, the repackaging alone might adversely affect their performance.

**The Unlawful Distribution Scheme**

38. LifeScan obtained documents from Wellpoint, Inc. (the parent company to Precision RX) related to its purchases of test strips bearing lot numbers 2664435, 2726838 and 2645635. Wellpoint tracks its purchases of test strips by lot numbers and samples with these lot numbers purchased by customers had been tested by LifeScan and found to have counterfeit packaging.

39. The Wellpoint documents show that it purchased the lot numbers 2664435 and 2726838 from South Pointe, which is located in Nesconset, New York and Glasgow, Kentucky. South Pointe is an authorized distributor of LifeScan products that has signed a contract with LifeScan obligating it to only purchase LifeScan test strips from LifeScan. Moreover, Wellpoint

requires its distributors to provide it with pedigree information so as to ensure that the product it purchases is not gray market product. WellPoint requires this pedigree information in order to protect its customers from counterfeit or adulterated product. In order to induce Wellpoint to make the purchases South Pointe provided to Wellpoint a signed pedigree stating that the test strips it was selling to Wellpoint came either directly from LifeScan or from LifeScan's authorized distributors, McKesson or AmeriSource Bergen. By purchasing diverted product and selling it to Wellpoint, South Pointe not only breached its contract with LifeScan, but it also defrauded Wellpoint by falsely attesting that it had purchased the test strips it sold to Wellpoint directly from LifeScan or its authorized distributors.

40. Wellpoint bought counterfeit packaged tests strips bearing lot number 2645635 from QK. Like South Pointe, Wellpoint required QK to attest that it only purchased LifeScan test strips directly from LifeScan or an authorized LifeScan distributor. QK, however, defrauded Wellpoint by claiming that QK had purchased the test strips directly from LifeScan.

41. QK in fact had purchased the counterfeit packaged OneTouch test strips bearing lot number 2645635 from MC Distributors, which is not an authorized LifeScan distributor.

42. MC Distributors purchased more than 7,000 boxes of the counterfeit packaged test strips bearing lot number 2645635 from Rowan Tree, a South African company. Thus more than 700,000 blood glucose test strips which are labeled with false information have entered the stream of commerce for purchase by customers in the United States. These test strips, which MC Distributors purchased from Rowan Tree, were sold to Quality King who in turn sold them to, among others, Precision Rx.

43. MC Distributors was sued on November 20, 2006 by LifeScan for selling counterfeit OneTouch test strips that according to the United States Food and Drug

KL3 2647284.5

Administration could cause death. Subsequently, MC Distributors admitted to selling those counterfeits. The labels, boxes, and actual test strips were all counterfeit and obtained by MC Distributors from a husband and wife working out of their home. Given that MC Distributors are recidivist sellers of counterfeit OneTouch test strips they either knew or should have known that the test strips they obtained from Rowan Tree are counterfeit.

44. In November and December 2006, MC Distributors sold to HealthSource a large quantity of OneTouch test strips in purported U.S. Retail packaging, which it had purchased from Rowan Tree.

45. The LifeScan test strips purchased by MC Distributors from Rowan Tree in South African are Ultra test strips packaged in U.S. Retail packaging. However, LifeScan does not sell U.S. packaged products outside of the U.S. and does not sell any Ultra test strips in South Africa.

46. Rowan Tree operates clandestinely from a residence, and has chosen an anonymous name. More than 90 companies in South Africa are registered with "Rowan Tree" in the name.

47. Rowan Tree avails itself of the United States, and New York in particular, as a forum in which to conduct some key aspects of its corrupt business. For example, Rowan Tree demands payment for its counterfeit test strips in U.S. Dollars, and its U.S. dollar transactions are cleared through Wachovia Bank in New York. On information and belief it also uses airports located in the Eastern District of New York to bring counterfeits into the United States.

**Rowan Tree Conspires with MC Distributors**

48. MC Distributors is a sophisticated distributor that on information and belief conspired with Rowan Tree to distribute the OneTouch test strips with counterfeit labels and packaged in counterfeit boxes.

KL3 2647284.5

49. First, Rowan Tree did not buy test strips directly from LifeScan in U.S. Retail packaging. Rather, it purchased test strips in international packaging not meant for sale in the United States. Upon information and belief Rowan Tree removed the genuine labels from the international packaged product and replaced it with counterfeit labels that closely mimic U.S. Retail labels. In addition, Rowan Tree printed counterfeit cartons that mimic U.S. retail cartons to place the newly labeled vials into before exportation to MC Distributors for distribution throughout the United States, including into the Eastern District of New York.

50. MC Distributors knew or should have known that genuine packaged OneTouch test strips meant for sale in the United States would not have been sold through a South African company, particularly when the products are being distributed from South Africa in huge quantities.

51. In short, the defendants are fully engaged in the illegitimate business of selling counterfeit test strips bearing the OneTouch Marks worldwide, availing themselves repeatedly of the United States, and New York in particular, as a forum to which their counterfeit products can be shipped, from which those products can be sold, and through which U.S. dollars can be sent and received. At the same time, through secrecy, corruption, hidden funds, and a contrived web of participants, they seek to evade discovery of, and liability for, their illegal conduct.

52. Plaintiffs have no adequate remedy at law to prevent defendants' wrongful conduct.

## FIRST CAUSE OF ACTION
## FEDERAL TRADEMARK INFRINGEMENT

53. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

54. In violation of 15 U.S.C. § 1114(1)(a), the defendants, independently and in conspiracy with one another, used in commerce, without Plaintiffs' consent, either a

- 13 -

KL3 2647284.5

reproduction, counterfeit, copy or colorable imitation of the OneTouch Marks in connection with the sale, offering for sale, distribution, or advertising of counterfeit packaged OneTouch test strips or in connection with which such use that is likely to cause confusion, or to cause mistake or to deceive.

## SECOND CAUSE OF ACTION:
## FEDERAL TRADEMARK INFRINGEMENT

55. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

56. In violation of 15 U.S.C. § 1114(1)(b), the defendants, independently and in conspiracy with one another, reproduced, counterfeited, copied or colorably imitated a registered mark, slogan and/or trade dress belonging to J&J and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit packaged OneTouch test strips on or in connection with such use that is likely to cause confusion, to cause mistake or to deceive.

## THIRD CAUSE OF ACTION:
## FALSE DESCRIPTION AND DESIGNATION OF ORIGIN IN COMMERCE

57. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

58. In violation of 15 U.S.C. § 1125(a)(1)(A), the defendants, independently and in conspiracy with one another, in connection with the counterfeit LifeScan products, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association with LifeScan.

## FOURTH CAUSE OF ACTION:
## FEDERAL FALSE ADVERTISING

59. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

60. In violation of 15 U.S.C. § 1125(a)(1)(B), the defendants, independently and in conspiracy with one another, in connection with the sale of the counterfeit LifeScan products, used a slogan, trade dress, word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of the counterfeit LifeScan products.

## FIFTH CAUSE OF ACTION:
## FEDERAL DILUTION OF MARK

61. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

62. The OneTouch Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

63. The defendants are selling and/or have sold counterfeit products bearing the OneTouch Marks after such trademarks and trade dress became famous.

64. By selling these counterfeit packaged products, the defendants, independently and in conspiracy with one another, have diluted and are diluting the distinctive quality of a mark or trade name owned by J&J in violation of 15 U.S.C. § 1125(c).

## SIXTH CAUSE OF ACTION:
## NEW YORK DILUTION OF MARK AND INJURY TO BUSINESS REPUTATION

65. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

66. The OneTouch Marks are distinctive within the meaning of New York General Business Law § 360-l.

67. By selling counterfeit products bearing the OneTouch Marks, the defendants, independently and in conspiracy with one another, have injured and are continuing to injure Plaintiffs' business reputation and/or have diluted and are continuing to dilute the distinctive quality of a mark or trade name owned by J&J, in violation of New York General Business Law § 360-l.

## SEVENTH CAUSE OF ACTION
## NEW YORK DECEPTIVE BUSINESS PRACTICES

68. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

69. In violation of New York General Business Law § 349, the defendants, independently and in conspiracy with one another, are selling, offering for sale and/or distributing low quality counterfeit products unlawfully bearing the OneTouch Marks.

## EIGHTH CAUSE OF ACTION:
## COMMON LAW UNFAIR COMPETITION

70. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

71. In violation of the common law of the State of New York and elsewhere, the defendants, independently and in conspiracy with one another, have unfairly competed with LifeScan by selling the counterfeit products.

## NINTH CAUSE OF ACTION:
## COMMON LAW UNJUST ENRICHMENT

72. Plaintiffs repeat and reallege paragraphs 1-52 as if fully set forth herein.

73. By selling the counterfeit products bearing J&J's valuable trademarks independently and in conspiracy with one another, the defendants have been unjustly enriched at Plaintiffs' expense in violation of the common law of New York and elsewhere.

KL3 2647284.5

## RELIEF SOUGHT

WHEREFORE, Plaintiffs demand judgment against the defendants as follows:

(a) that a temporary restraining order and preliminary and permanent injunctions be issued enjoining each and every one of the defendants and their subsidiaries, parents, affiliates, agents, servants, employees, members, directors, officers and attorneys and those persons in active concert or participation with them:

    (i) from using any of the OneTouch Marks, whether genuine or counterfeit, or any marks confusingly similar thereto in connection with the manufacture, sale, offer for sale, distribution, advertisement, or any other use of blood glucose test strips;

    (ii) from using any logo, trade name or trademark confusingly similar to any of the OneTouch Marks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of the defendants or of others are sponsored by, authorized by or in any way associated with Plaintiffs;

    (iii) from infringing any of the OneTouch Marks;

    (iv) from otherwise unfairly competing with LifeScan in the manufacture, sale, offering for sale, distribution, advertisement, or any other use of OneTouch test strips;

    (v) from falsely representing themselves as being connected with Plaintiffs or sponsored by or associated with Plaintiffs or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that defendant is associated with Plaintiffs;

KL3 2647284.5

  (vi) from using any reproduction, counterfeit, copy, or colorable imitation of any of the OneTouch Marks in connection with the publicity, promotion, sale, or advertising of blood glucose test strips;

  (vii) from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being OneTouch test strips and from offering such goods in commerce;

  (viii) from diluting any of the OneTouch Marks;

  (ix) from destroying any records documenting the manufacture, sale, offer for sale, distribution, advertisement or receipt of any product purporting to be OneTouch test strips; and

  (x) from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

  (b) ordering that, within fifteen days after the entry and service of a temporary, preliminary or permanent injunction, the defendants serve and file a written report under oath setting forth in detail the manner and form in which they have complied with the injunction; and

  (c) ordering that all infringing material be turned over, seized, impounded and/or destroyed; and

  (d) awarding to Plaintiffs punitive damages from each defendant in an amount to be ascertained at trial, but in no event less than $25 million; and

  (e) awarding to Plaintiffs statutory on actual damages and costs in an amount to be ascertained at trial, and costs and attorney's fees; and

KL3 2647284.5

(f) awarding to Plaintiffs an accounting, and an award of: (i) all ill-gotten profits from the defendants' manufacture, sale and/or distribution of the counterfeit OneTouch test strips; (ii) Plaintiffs' lost profits; and (iii) Plaintiffs' remedial costs; and

(g) awarding to Plaintiffs pre-judgment and post-judgment interest; and

(h) awarding such other and further relief to Plaintiffs as may be just and proper.

Dated: New York, New York
    March 31, 2008

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
Geoffrey Potter (GP-8073)
gpotter@kramerlevin.com
Marjorie Sheldon (MS-8595)
msheldon@kramerlevin.com
Ilyssa Birnbach Sena (IS-5851)
isena@kramerlevin.com
Parthena Psyllos (PG-7774)
ppsyllos@kramerlevin.com
Christos G. Yatrakis (CY-0254)
cyatrakis@kramerlevin.com
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Plaintiffs Johnson & Johnson and LifeScan, Inc.