# TASHJIAN & PADIAN
ATTORNEYS AT LAW
15 WEST 36TH STREET
NEW YORK, NEW YORK 10018

TELEPHONE: (212) 319-9800
FACSIMILE: (212) 319-9883
NOT FOR SERVICE OF LITIGATION PAPERS

NEWARK, NEW JERSEY
WEB: http://www.tashpad.com
E-MAIL: info@tashpad.com

September 28, 2009

VIA ECF
Hon. Steven M. Gold
Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1217
Brooklyn, New York 11201

Re:   Johnson & Johnson, et al. v. Product Performance
      Company, Inc., et al. Docket No. 08 Civ. 1297 (SLT)

Dear Judge Gold:

We write on behalf of the defendants Product Performance Company, Inc., Jerrold Herman, Stephen Herman and Robert B. Botwinick (collectively, the "Product Performance Defendants").

In our previous letter to Your Honor dated July 30, 2009, we described a discovery dispute with Plaintiffs arising out of the Plaintiffs' refusal (i) to produce documents concerning their sales and pricing of the subject product and (ii) to resolve these issues by stipulation as suggested by Your Honor.[1] Since that time, another discovery dispute with Plaintiffs has come into focus arising out of Plaintiffs' refusal to produce relevant and material documents concerning their investigation and analysis of the alleged counterfeit products at issue in this matter. Accordingly, we now write again pursuant to Local Rule 37.3 to advise the Court of this additional discovery dispute and request that Your Honor either (i) issue an Order determining this dispute as well as the prior dispute based upon the parties' letter submissions and/or a conference before Your Honor, or (ii) grant the Product Performance Defendants leave to make a formal motion to compel the requested discovery from Plaintiffs.

## Discovery Concerning the Plaintiffs' Analysis of the Seized Product

Documents concerning Plaintiffs' investigation and analysis of the alleged counterfeit products are material and relevant because the Product Performance Defendants do not concede that each and every instance of OneTouch Ultra sold by them was counterfeit. Plaintiffs' primary employee responsible for the investigation and inspection of the subject product is Dr. Patricia Maguire, who was deposed on February 22, 2009 and July 22-23, 2009. Copies of the

---

[1] In what has proven to be their *modus operandi* in this matter, Plaintiffs completely ignored the July 30, 2009 letter.

**TASHJIAN & PADIAN**
ATTORNEYS AT LAW

The Hon. Steven M. Gold
September 28, 2009
Page 2 of 3

relevant portions of the Maguire depositions are attached hereto as Exhibit A.[2] Dr. Maguire admitted during her deposition that authentic OneTouch Ultra was found amongst the allegedly counterfeit product seized from the defendants and that only 20 percent or less of the product seized from defendants was counterfeit (see Exh. A at 120:11-22; 307:23-308:18; 558:19-24; 561:17-563:18).

Naturally, the Product Performance Defendants have requested discovery concerning how the Plaintiffs determined which samples were counterfeit and which were genuine.[3] Plaintiffs, however, have refused to produce any documents concerning this subject apart from documents created by Plaintiffs and/or their counsel after the fact for the purposes of this litigation that show photographs of samples of the seized product next to photographs of supposedly authentic "retained" samples. The defendants should not be forced to rely on Plaintiffs' self-serving representations as to what is authentic and what is counterfeit, and Plaintiffs should be required to produce material and relevant discovery on this issue, including:

- The "lot specific" information contained in Plaintiffs' "Master Enterprise Database" (see Exh. A at 275:24-276:9; 437:12-25);

- The "controlled artwork" for the packaging and labeling of the product that they used to evaluate the subject product (id. at 332:19-333:16);

- Discovery concerning Plaintiffs' determination that product that they had originally determined to be counterfeit in this action was actually authentic product (id. at 378:21-382:24); and

- An inventory of the product that was deemed authentic (see id. at 534:5-13).

Given Plaintiffs' own admitted difficulties in determining authentic product, it is quite possible that defendants will encounter additional instances of genuine product that were not discovered by Plaintiffs, thereby narrowing the issues for trial. Any of Plaintiffs' concerns regarding trade secrets contained in such documents can be mitigated by a confidentiality agreement containing an "attorneys' eyes only" provision.

**Discovery Concerning the Plaintiffs' Prior Investigations**

The Product Performance Defendants have asserted various affirmative defenses against Plaintiffs' claims that they willfully sold OneTouch Ultra test strips in counterfeit packaging,

---

[2] As the transcript of Dr. Maguire's deposition testimony has been designated "Confidential – Attorneys' Eyes Only" by stipulation of the parties, Exhibit A will be provided to Your Honor in hard copy for *in camera* review and will not be attached to the copy of this letter filed on the ECF system.

[3] The Defendants' requests for this information are set forth in Request Nos. 11-13, 15-18, 20, 22-25, 27-30, 36 of the First Document Request; Request Nos. 15, 17-27, 30 and 31 of the Second Document Request, and Interrogatories Nos. 7 and 8, copies of which are attached to the July 30, 2009 letter as Exhibits A-C.

TASHJIAN & PADIAN
ATTORNEYS AT LAW

The Hon. Steven M. Gold
September 28, 2009
Page 3 of 3

particularly the defense of laches -- a long-recognized defense in a trademark infringement case where the defendant was an innocent infringer. See Hermes Intern. v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 55 U.S.P.Q.2d 1360 (2d Cir. 2000). Here, the Product Performance Defendants aver that they had no reason to suspect that the subject goods were counterfeit and indeed could not have known, given that Plaintiffs kept the lot specific information secret from the industry and, as per Dr. Maguire, a purchaser of the subject goods would not be able to determine if they were counterfeit without this information (see Exh. A at 156:13-19; 163:5-164:4). Plaintiffs have also admitted that as early as 2005 they were aware of OneTouch in counterfeit U.S.-labeling originating from the very same South African defendants[4] and were aware that "it's the same type of thing [that was] going on" here (see id. at 427:12-428:5). At the same time, Plaintiffs did nothing to warn the trade or the public of the counterfeits or to track down the source of the counterfeit packaging (id. at 469:14-470:18) before commencing this action in early 2008. Instead, Plaintiffs waited approximately three years before going to Court to obtain seizure orders and temporary restraining orders based, in part, upon an alleged health risk to the public that they also refuse to produce documents concerning (see id. at 288:3-11).

Dr. Maguire testified that Plaintiffs' customer complaint group in Scotland kept records of complaints from customers that may indicate when customers first began experiencing the counterfeit labeling at issue in this case, but Plaintiffs have also refused to produce any of the "complaint files" from Lifescan Scotland or documents concerning how Plaintiffs dealt with such customer complaints. See Exh. A at 263:9-17; 265:7-266:11; 267:10-15. At Dr. Maguire's deposition, Plaintiffs' counsel repeatedly directed the witness not to answer questions concerning this issue. See id. at 421:19-422:2; 422:9-12; 425:6-426:3; 470:10-18. The Product Performance Defendants respectfully request an order directing Plaintiffs' witnesses to respond to inquiries regarding the Plaintiffs' knowledge of the prior incidents of allegedly counterfeit packaging, including Dr. Maguire, who should be required to appear for further questioning at Plaintiffs' expense. It is vitally important that the Product Performance Defendants have access to these documents concerning the prior investigations before the November 11, 2009 deposition of Plaintiffs' witness Roy Albiani, who Ms. Maguire testified is Plaintiff's Director of Brand Integrity (see Exh. A at 242:5-12) and was the person who told her about Plaintiffs' previous dealings in 2005 with the counterfeit packaging arising out of South Africa (id. at 252:4-253:17).

Respectfully yours,

Gerald Padian

cc:     Service List (via e-mail)

---

[4] See Sixth Amended Complaint at ¶¶ 183-84